Argued and submitted August 5, reversed and remanded with instructions October 23, 2002, petition for review denied February 4, 2003 (335 Or 195)

William T. TAKANO,
individually and Tamara Takano,
as Guardian Ad Litem for Bryan Takano,
*Appellants,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
*Respondent.*

0012-12473; A113785

56 P3d 491

Randall J. Wolfe argued the cause and filed the briefs for appellants.

John S. Cavanagh argued the cause for respondent. With him on the brief was Cavanagh & Zipse.

Charles Robinowitz filed the brief *amicus curiae* for Oregon Trial Lawyers' Association.

Before Kistler, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

**BREWER, J.**

In October 1999, William Takano and his son, Bryan, along with the other three occupants of a vehicle owned and operated by William were injured in a traffic accident caused by the negligence of another motorist, Buss. At the time of the accident, William held an automobile insurance policy with defendant that included underinsured motorist (UIM) coverage with limits in the amount of $100,000 per person and $300,000 per accident.

William and Tamara Takano, as guardian ad litem for Bryan, brought this action, seeking a declaration that William and Bryan each are entitled to UIM benefits in an amount equal to the difference between the $100,000 per person UIM limit under the policy issued by defendant and the amount each of them recovered for personal injuries from the negligent motorist's automobile liability insurer. The trial court denied plaintiffs' motion for summary judgment on their claim and granted defendant's cross-motion for summary judgment. The issue on appeal is whether ORS 742.502 (1997) requires a UIM insurer to make UIM benefits available to multiple claimants where the applicable per person UIM policy limit matches the per person liability limit of the negligent motorist's insurance policy. Because the facts are undisputed, we review for errors of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We reverse and remand.

Buss had an automobile liability insurance policy with limits in the amounts of $100,000 per person and $300,000 per accident. The benefits payable under the liability policy were divided among the five occupants of plaintiffs' vehicle. Plaintiffs each recovered $19,750 in liability proceeds after defendant consented to settlements in those amounts. ORS 742.502(4)(a) (1997). Each plaintiff then demanded UIM benefits from defendant in the sum of $80,250, the difference between the per person UIM limit under the policy issued by defendant and the amount each plaintiff recovered from Buss's liability insurer. When defendant refused their demand for UIM benefits, plaintiffs brought this action. As noted, plaintiffs appeal from the trial

court's determination, on cross-motions for summary judgment, that defendant is not obligated to pay UIM benefits.

The problem presented is one of statutory construction concerning the meaning of ORS 742.502 (1997). We begin our analysis by examining the statute's text and context, including previous versions of the same statute and judicial decisions construing those versions. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). If its meaning remains unclear, we resort to legislative history. *Id.* at 611-12.

Three provisions of ORS 742.502 (1997) are germane to our analysis. The first, subsection (3), was amended in 1997 to read as follows:[1]

"The insurer issuing such policy may offer one or more options of uninsured motorist coverage larger than the amounts prescribed to meet the requirements of ORS 806.070 and in excess of the limits provided under the policy for motor vehicle bodily injury liability insurance. Offers of uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle [*that is insured for*] **with liability insurance that provides recovery in** an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

(Emphasis added.) The second provision, ORS 742.502(5), was added to the statute in 1997. It provides:

"Except as provided in this subsection, the 'amount recovered from other automobile liability insurance policies' means the proceeds of liability insurance recovered by or on behalf of the injured party. Proceeds recovered on behalf of the injured party include proceeds received by the injured party's insurer as reimbursement for personal injury protection benefits provided to the injured person, proceeds received by the medical providers of the injured

---

[1] Deletions are italicized within brackets. Additions are shown in boldface type.

person and proceeds received as attorney fees on the claim of the injured person. Where applicable liability insurance policy limits are exhausted upon payment, settlement or judgment by division among two or more injured persons, the 'amount recovered from other automobile liability insurance policies' means the proceeds that are recovered by or on behalf of the injured person but does not include any proceeds of that liability policy received by other injured persons."

The third relevant provision, ORS 742.502(2)(a), was not amended in 1997. It provides, in part:

"Uninsured motorist coverage larger than the amounts required by ORS 806.070 shall include underinsurance coverage for damages or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle that is insured for an amount that is less than the insured's uninsured motorist coverage. Underinsurance benefits shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies."

Before ORS 742.502 was amended in 1997, this court held, in *Lunsford v. Farmers Ins. Co.*, 118 Or App 308, 846 P2d 1206, *rev den*, 317 Or 162 (1993), that an insurer was not liable for UIM benefits under the previous version of the statute to an insured who was involved in a collision with a negligent motorist whose liability limits equaled her own UIM coverage limits, even though (1) more than one person was injured in the accident; and (2) only a portion of the liability benefits provided by the negligent motorist's policy was available to pay the insured's claim. We explained that, "[u]nder the statute, [insurer] is required to provide underinsurance coverage only if plaintiff's coverage exceeded [the negligent motorist's] liability coverage at the time of the accident. Plaintiff acknowledges that her coverage limits were identical to [the negligent motorist's limits]." *Id.* at 309.

Plaintiffs argue that ORS 742.502 (1997), in particular, subsections (3) and (5), override our decision in *Lunsford*. According to plaintiffs, "[t]here is no longer an inquiry to see if the limits match. The only issue is the actual 'recovery' in multi-victim situations."

Defendant sees it differently. It notes that in 1997, the legislature failed to amend ORS 742.502(2)(a), thus leaving unchanged that subsection's description of UIM benefits as "coverage for damages or death * * * arising out of the * * * use of a motor vehicle that is insured for an amount that is less than the insured's [UIM] coverage." Defendant contends that subsection (5) comes into play only *if* there is underinsurance coverage in the first place. That issue, defendant reasons, must be determined exclusively by reference to subsection (2)(a), which, it asserts, compels the same conclusion that we reached in *Lunsford*, namely, that matching UIM and liability policy limits foreclose the recovery of UIM benefits in multiple claimant situations, even though benefits equal to the per person liability limit are not available to any of the claimants.

In describing an underinsured circumstance, the first sentence of ORS 742.502(2)(a) refers to "a motor vehicle that is insured for * * * less than the insured's [UIM] coverage." The quoted phrase is not connected by cross-definition or in any other way to the multiple claimant provisions of subsections (3) and (5). Read in isolation, it appears, as defendant suggests, to describe an underinsured circumstance based on whether the claimant's UIM policy limits and the tortfeasor's liability policy limits match. Defendant acknowledges that its interpretation of subsection (2)(a) creates tension between that subsection and ORS 742.502(3) (1997) because, in prescribing offers of UIM coverage, subsection (3) focuses on the claimant's "recovery" of liability insurance proceeds, rather than whether the UIM policy limits match the liability policy limits.[2]

Defendant pays insufficient attention to the last sentence of ORS 742.502(2)(a), which provides that UIM benefits "shall be equal to uninsured motorist coverage benefits less the amount recovered from other automobile liability insurance policies." That phrase, in turn, is defined in subsection (5) to mean "the proceeds that are recovered by or on behalf of the injured person but does not include any proceeds of that

---

[2] Defendant proposes several ways to resolve that "apparent conflict," but none of its suggestions merits extended consideration.

liability policy received by other injured persons." Read in context, then, the last sentence of subsection (2)(a) provides that the availability of UIM benefits for each of several claimants must be based on each claimant's recovery from the tortfeasor's liability insurer. Thus, tension exists not only between subsection (2)(a) and subsections (3) and (5), but there also is internal tension within subsection (2)(a) itself.

However, the conflict is not unresolvable. When different provisions of a statute that address the same subject are inconsistent, the more specific provision takes precedence over the general provision. ORS 174.020(2); *State ex rel Juv. Dept. v. M.T.*, 321 Or 419, 426, 899 P2d 1192 (1995). As pertinent here, the last sentence of subsection (2)(a) and subsections (3) and (5) jointly address a circumstance—the multiple claimant situation—that is more specific than the general provision in subsection (2)(a) on which defendant relies. The legislature's intent, expressed most particularly in ORS 742.502(3) and (5) (1997), is that the amount of a claimant's recovery from a negligent motorist's liability insurer—not the issue of whether the claimant's UIM limits match the tortfeasor's liability limits—determines the availability and amount of UIM coverage in multiple claimant situations. Accordingly, our decision in *Lunsford* does not apply to ORS 742.502 (1997).[3]

If it were necessary to resort to legislative history, that aid unquestionably supports our construction. Oregon Laws 1997, chapter 808, subsection 1, was codified as ORS 742.502 (1997). Its drafter submitted to the legislature a written statement explaining its purpose: "[ORS 742.502 (1997)] solves the multiple claimant problem in matching limits situation, affords coverage within existing UM/UIM limits purchased, where now denied and defines underinsured driver in terms of recovery paid to injured person."

---

[3] In *Fox v. Country Mutual Ins. Co.*, 169 Or App 54, 7 P3d 677, *rev den*, 332 Or 137 (2000), we followed our decision in *Lunsford*, holding that ORS 742.502(2)(a) provides that a vehicle is underinsured only if the injured claimant carries higher amounts of UIM coverage than the tortfeasor's liability insurance limits. *Fox* is not germane to our decision here because it involved a single claimant and it was decided under the pre-1997 version of ORS 742.502.

Testimony, Senate Committee on Business, Law and Government, SB 645, April 3, 1997, Ex P (statement of Joel DeVore).[4]

Because ORS 742.502(5) (1997) describes the available amount of UIM benefits based on an injured claimant's recovery of liability insurance benefits, rather than a comparison of policy limits, each plaintiff is entitled to UIM coverage in an amount equal to the difference between the $100,000 per person UIM limit and the amount each plaintiff recovered from the negligent motorist's liability insurer.[5] It follows that the trial court erred in denying plaintiffs' motion for summary judgment and in granting defendant's cross-motion for summary judgment.

Reversed and remanded with instructions to grant plaintiffs' motion for summary judgment.

---

[4] The legislative history also makes clear that the 1997 amendments to ORS 742.502 were intended as a form of *quid pro quo* to injured claimants for the contemporaneous legislative reversal of *Vega v. Farmers Ins. Co.*, 323 Or 291, 918 P2d 95 (1996), where the Supreme Court had ruled against defendant on the issue of the order in which claimants could sue negligent drivers and UIM insurers. Testimony, Senate Committee on Business, Law and Government, SB 645, April 3, 1997, Ex P (statement of Joel DeVore).

[5] The record does not disclose the amount, if any, of UIM benefits paid to or claimed by the other occupants of the Takano vehicle. The parties do not raise the issue of whether the limits of Buss's policy were exhausted, and we express no opinion on that issue. Further, this case does not present an occasion to consider the allocation of UIM benefits among multiple claimants whose combined claims exceed the total per accident UIM policy limit.